[PHILADELPHIA, JANUARY 25, 1841.]

## QUINLAN *against* DAVIS.

## QUINLAN *against* DAVIS and Another.

IN ERROR.

1. In an action on a promissory note drawn by the defendant in favour of the plaintiff, the defendant called a witness, who stated on his *voir dire*, that he was interested in the event of the suit, and expected to receive part of the consideration of the note. *Held*, that he was competent to testify for the defendant; the witness making no objection.

2. It seems that the defendant would have a right to compel a witness to testify under such circumstances.

3. Evidence is admissible of admissions made by one of two co-plaintiffs or defendants, respecting material facts within the knowledge of the party making the admissions; but declarations by one of two co-plaintiffs or defendants of what he has heard the other plaintiff or defendant say in regard to the subject-matter of the action, are not admissible.

4. By articles of agreement under seal between the plaintiff and defendant, the defendant agreed to take a certain portion of a rail-road contract, which the plaintiff had entered into with the rail-road company, at a certain rate, and to pay the plaintiff a certain sum for it; and the plaintiff agreed to give the defendant a power of attorney to do all business pertaining to the contract if accepted by the company: *Held*, that these were independent covenants, and that it was not necessary for the plaintiff to prove that he had given or offered to give the defendant the power of attorney mentioned in the agreement.

THESE cases came before the court on writs of error to the Common Pleas of Montgomery county.

The first was an action on the case brought by John M. Davis against Michael Quinlan, in which the plaintiff declared upon a promissory note drawn by the defendant in his favour, dated Norristown, May 28th, 1839, at ninety days, for $232 50.

The defendant pleaded *non assumpsit* and payment; upon which
VOL. VI.—22

(Quinlan *v.* Davis.)

issues the cause came on for trial, before Fox, (President,) on the 22d of October, 1840, when the plaintiff's counsel proved the note, and gave it in evidence.

The defendant's counsel then called one Charles J. Davis as a witness, having previously given the following notice of special matter.

" You will please take notice that on the trial of the above case, the plaintiff will be required to show the consideration for which the promissory note mentioned in the declaration was given to him by the defendant. You are also further notified that the defendant will give evidence to show that the said note was given on account of a certain sum of four hundred dollars, which the defendant, by a certain article of agreement, dated the 22d day of October, 1838, made by and between John M. Davis and Charles J. Davis, of the first part, and the said defendant of the second part, was to pay to the said party of the first part, in consideration that they would transfer to him all their interest and power in a certain contract which they before that time had made with the Norristown and Valley Rail Road Company, to grade Section No. 12 of the said road, and execute to him a letter of attorney impowering him to do the same, and to receive, therefore, the same price or sum for which they themselves undertook the said work; that no such transfer was ever made by the said John M. and Charles J. Davis to the said defendant; and that no such letter of attorney was ever executed to the said defendant by the said John M. and Charles J. Davis; and that there has been an entire failure of the consideration for which the said note was given."

The plaintiff's counsel required that the said Charles J. Davis should be sworn on his *voir dire;* whereupon he testified on his *voir dire* as follows:

" I expect to gain if the plaintiff recovers, and to lose if the verdict is for the defendant. I am interested in the event of the suit." And being cross-examined, the witness testified as follows: " I am a party to this action. Part of the consideration of that note would come to me. It is my interest that the plaintiff should recover in this suit. It is my interest that the defendant should lose the suit."

The defendant's counsel thereupon asked that he should be sworn in chief, which was objected to by the plaintiff's counsel; and the court sustained the objection, and rejected the witness; whereupon the defendant's counsel excepted.

The defendant's counsel then moved the court to order the name of Charles J. Davis to be placed on the record. The plaintiff's

(Quinlan *v.* Davis.)

counsel objected, and the objection was sustained by the court; and the defendant's counsel excepted.

The defendant's counsel then offered to prove the declarations and admissions of Charles J. Davis, made by him as a witness for the plaintiff before the arbitrators, respecting the consideration for which the note was given. The evidence was objected to by the plaintiff, but admitted by the court; whereupon the defendant called Francis Dimond, Esq., who testified as follows:

"I was present at the trial of this case before the arbitrators. Charles J. Davis was examined as a witness before them. He was examined on the part of the defendant. My recollection is, that the counsel for the plaintiff objected to his examination. · He stated that he was a brother of the plaintiff. I do not know that C. J. Davis made any objection himself to being examined. I have no distinct recollection whether any objection was made or not. Charles J. Davis stated that $100 of the note was in part consideration of the articles of agreement; that $132 was for two horses, two carts and gears; and that the two dollars and a half were for discount." -

The defendant's counsel then proposed to ask the following question :—" What did Charles J. Davis state that his brother, John M. Davis, the plaintiff, had told him in reference to the consideration for which the note was given ?" which question was objected to by the plaintiff's counsel, and rejected by the court; and the defendant's counsel again excepted.

The article of agreement referred to in the notice of special matter, is as follows;

" Article of agreement made and concluded this 22d of October, 1838, between John M. and Charles J. Davis, of the county of Chester on the one part, and Michael Quinlan, of the county of Montgomery, of the other part, are as follows: Said Michael Quinlan agrees to take section No. 12 of the Norristown and Valley Rail Road, at the following prices, viz.: eleven cents for excavation, and twelve cents for embankment; twenty-five cents for loose or stratified rock, and fifty cents for solid rock. Grubbing and clearing fifteen dollars, cross-drains seventy cents per lineal foot, as per John M. and C. J. Davis's contract with the company. Said Michael Quinlan agrees to give J. M. and C. J. Davis four hundred dollars for said section, viz.: fifty dollars monthly until said amount shall be paid; and J. M. and C. J. Davis agree to give said Michael Quinlan a power of attorney to do all business pertaining to the contract, if accepted by the company. John M. Davis agrees to find two tons of straw, delivered at Michael Quinlan's stable; and said Michael Quinlan agrees to let John M. Davis have all the manure made in or about said stable.

(Quinlan *v.* Davis.)

John M. Davis agrees to let said Michael Quinlan build a shanty on his ground. Said Michael Quinlan binds himself to finish said contract as per original contract between John M. and Charles J. Davis with the company. For the fulfilment of the above contract, we, the parties, bind ourselves under a penalty of five hundred dollars to abide by and complete."

This agreement was signed and sealed by the parties.

Other evidence was given, which it is not material to state here.

The learned judge charged the jury in reference to the defence set up, that if the defendant required a power of attorney it was incumbent on him to show that he had demanded it from the plaintiffs, and that they had neglected or refused to give it; and that if the jury believed the evidence, their verdict must be for the plaintiff.

To this charge the defendant's counsel excepted.

The jury found for the plaintiff; and the defendant, on the return of the record, filed the following specifications of error.

" 1. The court erred in rejecting Charles J. Davis as a witness in chief on the part of the defendant.

2. The court erred in refusing to order the name of Charles J. Davis to be placed on the record, as one of the plaintiffs in the suit.

3. The court erred in overruling the evidence mentioned in the third bill of exceptions.

4. The court erred in charging the jury that if the defendant wanted a power of attorney, it was incumbent on him to show a demand for it, and a refusal on the part of the plaintiff to give it; and that, if the jury believed the evidence, their verdict must be for the plaintiff."

---

The second of these suits was an action of covenant, brought in the names of John M. Davis and Charles J. Davis against Michael Quinlan upon the articles of agreement above stated.

The cause was tried on the 22d of October, 1840, when the plaintiff's counsel produced and gave in evidence the articles of agreement; and then called William Hamill, who testified as follows:

" I am at present, president of the Valley Rail Road Company. Section No. 12, stood in Quinlan's name. It is not finished yet. Quinlan had the section when I came in the board. He was returned in the estimates last summer by the engineers; returned to me as President. I granted the orders to Quinlan on the treasurer for pay-

(Quinlan v. Davis.)

ment from that time to this. He quit work before he finished the section No. 12: we still consider it his; he has not abandoned it. Quinlan repeatedly received orders from me on the treasurer. He received the orders up to the time he quit work. We quit work, generally, last fall; and he quit when the rest did. He has been the only contractor on that section since I came in the board. I will have been in two years in December. Can't say the amount he has drawn; but it was $700 or $800 monthly. The estimates were returned to me, and no objection ever made, that he had no power of attorney. He has always been considered a good contractor. I think Davis never called on me in relation to the power of attorney." Cross-examined. "I can't tell how Quinlan became contractor on that section. I don't know that he became contractor under that agreement with the Davis's. Those orders were paid either in notes or cash, when he settled up, and he got his ten per cent. in stock. I don't know whether the notes are paid; they are generally paid. The company have his receipts up to the time he quit work on No. 12."

The defendant's counsel then called a witness to prove that the defendant called on the plaintiffs for the power of attorney which was stipulated for in the articles of agreement, and that the plaintiffs refused to give it. This testimony was objected to by the counsel for the plaintiffs. The court sustained the objection, and rejected the evidence; and the defendant's counsel excepted.

The defendant's counsel then proposed the following points, on which they requested the court to charge the jury.

"1. That it was incumbent on the plaintiffs to prove that they gave or offered to give to the defendant a power of attorney to do all business pertaining to the contract.

2. That if the jury are satisfied that no such power of attorney was given, or tendered to the defendant, the plaintiffs are not entitled to recover, and their verdict must be for the defendant."

The court, however, refused to charge the jury as requested; and a verdict was rendered for the plaintiffs.

Errors were assigned in the rejection of evidence, and the charge of the court.

Mr. *Mulvany* for the plaintiff in error, cited *Peake's Evid.* 167. *Jackson* v. *Vredenburg*, (1 *Johns. Rep.* 162.)　*Holdship* v. *Doran*, (2 *Penn. Rep.* 91.)　2 *Saund. Pl. & Ev.* 153.

Mr. *May*, contra, cited 2 *Starkie's Evid.* 102.　*Wakely* v. *Hart*, (6 *Binn.* 196.)　*Gallaher* v. *Milligan*, (3 *Penn. Rep.* 178.)　*Jordan* v. *Davis*, (5 *Whart.* 338.)

(Quinlan *v.* Davis.)

The opinion of the court was delivered by

ROGERS, J.—It is a principle of general application, that a party to a suit is not suffered to be a witness in support of his own interest; nor can he be compelled in a court of law, to give evidence for the opposite party against himself. But when one of several· co-plaintiffs comes forward voluntarily, or when called by the defendant, makes no objection, to disprove the defendant's liability to the demand made upon him, he may be admitted, with the consent of the adverse party, though at the same time, he defeats the claim of those who jointly sue with him. For if the plaintiff were to make a declaration against his interest, out of court, evidence of that declaration would be admissible : and the proof is equally credible, if, with the consent of the defendant, who waives all objection to his testimony, he declares the same thing, on oath, at the time of the trial. 10 *East*, 403. *Norden* v. *Williams*, (1 *Taunton*, 378.) *Gallaher* v. *Milligan*, (3 *Penn. Rep.* 177.) The objection, it seems, must come from the person called as a witness : it is therefore pretty clear, on the principles stated, that there was error in refusing to allow the testimony. But may not the case be rested on a broader ground; for would it be competent for a witness himself to refuse to testify on the facts disclosed? This point has not been directly decided; but we are of opinion it would not. For although it was once doubted whether a witness could be compelled to give evidence which might subject him to a civil action, or charge him with a debt, yet it has been since held that he is bound to answer a question, although his answer might render him liable to a civil suit. 1 *Hall's Law Journ.* 223. His interest will not excuse him. The objection must rest solely on the exception that he is a party. But it must be obvious that the name of the witness who for the first time claims an interest in the suit, nowhere appears on the record. That he is so, is disclosed by himself on his *voir dire ;* but we apprehend it is too late to claim a privilege which the law would otherwise allow him. Of this the plaintiff cannot complain, as this consequence may be avoided at the option of the plaintiff, by putting himself in a situation to be liable to costs, without subjecting the other side to the inconvenience and trouble of proving his interest *aliunde.* When the name is disclosed, both parties are put upon an equal footing. The plaintiff can neither be a witness in his own favour, nor. can he be compelled to testify against his interest. And this distinction may be salutary, as it may check the practice of omitting to name the real party, with a view to avoid costs, or, if necessary, to support the claim by his own oath. In the case of The King v. The Inhabitants of Woburn, (10 *East*, 395,) a rated inhabitant was not compelled to testify, although the nominal parties were the churchwardens and overseers of the poor, because he was considered a party, although not named on the record. And this

would seem to militate against the distinction taken; but then, as in the case of every corporator who is not an officer of the corporation, the name cannot appear, as the suit is brought in the corporate name; and for this reason, he cannot be deemed to waive his privilege: but where it may, and in fairness ought to appear who is the real plaintiff, he should be entitled to no such exemption; for this would permit him to assume the character of a party, or a witness, as may best suit his interest. Here, as it appears that the witness was jointly interested in the note, the action may have been brought for their joint use; and on failure of the action, he would have been liable for costs; and an execution, as such, might have been issued against him; but as it now stands, he can only be reached by attachment, after satisfactory proof *dehors* the record, that the suit was instituted for his benefit.

And these remarks have a bearing on the 2d and 3d exceptions; for the defendant cannot use him as a witness and a party also; and for this reason the court might very well refuse to order his name to be put on the record. Nor can his declarations be evidence, except in his character of party. It seems to me, however, that when it is discovered at the time of trial, by confession, or otherwise, that a person is really interested, the court may, and ought to add his name as plaintiff on the record.

The admissions of a party to the suit, against his interest, are evidence in favour of the other side, whether made by the real party on record, or by a nominal party, who sues as a trustee for the benefit of another, or whether by the party who is really interested in the suit, though not named. And this is the extent of the doctrine as to admissions; for I know of no case where the principle has been so far extended as to receive evidence of the declarations which one of two co-plaintiffs has heard the other say, in regard to the subject-matter of the action. The evidence is properly restricted to admissions of material facts within the knowledge of the party making the admission, and cannot safely be extended to his declarations of the admission of others. The testimony which was rejected purported to be, not what he himself knew, but what he had heard the other plaintiffs say, as to the consideration of the note. It was therefore properly overruled.

The next exception is common to both suits. The defendant alleges that it was incumbent on the plaintiffs to prove that they gave, or offered to give to the defendant, a power of attorney, to do all business pertaining to the contract. But it is contended, from an inspection of the agreement, that this is an independent covenant, which goes to part of the consideration only, and that a breach of it may be compensated in damages. It is, therefore, as has been repeatedly ruled, unnecessary for the plaintiffs to aver or prove performance on his part. 6 *Binn.* 159. 1 *Saun.* 320. The burthen of proof lies on the other side; but in fact, the defendant has received

(Quinlan *v.* Davis.)

no injury whatever. The section of the work stands in his name on the books of the company. He is regarded by the board, to all intents and purposes as the contractor. He is returned as such in the estimates of the engineer; and orders were given him regularly on the treasurer for the amount due, which was continued until he quit work. It would be monstrous, that the defendant, who has been in the enjoyment of all the benefits of the contract, should avoid it altogether, on the allegation, that the other contracting parties failed to comply with a part of the contract, when in truth the omission causes him little, if any injury.

The other exceptions have either been abandoned, or but feebly pressed.

The first case, *Quinlan* v. *Davis,* is reversed, and a *venire de novo* awarded. The second is affirmed.

Judgment accordingly.